

U.S. Department of Justice

Criminal Division
Narcotic and Dangerous Drugs Section

*Name*
*Trial Attorney*

*145 N Street, Northeast*
*Washington, D.C. 20530*

April 19, 2024

By ECF

The Honorable Joseph A. Marutollo
United States Magistrate Judge
United States District Court
100 Federal Plaza
Central Islip, New York 11722

    Re: United States v. Shu Jun Zhen, aka Yan Feng Chen, aka Chunyan Li
        Criminal Docket No. 24-MJ-305

Dear Judge Marutollo,

    The government respectfully submits this letter in anticipation of the defendant's initial appearance and application for bail. The defendant is a serious risk of flight. Accordingly, the government respectfully requests that the Court enter a permanent order of detention.

    I. Factual and Procedural Background

        A. Summary of the Charges and Investigation

    On March 20, 2024, a federal grand jury sitting in the Western District of North Carolina returned a sealed indictment against Shu Jun Zhen (the "defendant") and four of her co-conspirators, charging them with: (1) money laundering conspiracy, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(B)(i)g, and 1957(a); (2) concealment money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2; and (3) engaging or attempting to engage in a monetary transaction involving criminally derived property, in violation of 18 U.S.C. §§ 1957(a) and 2. On March 20, 2024, the court in the Western District of North Carolina issued a sealed arrest warrant for the defendant. Pursuant to this arrest warrant, the Defendant was arrested in Staten Island, New York, in the morning of April 18, 2024.

    The indictment in this case stems from a long-term and multi-agency investigation conducted by agents from the Drug Enforcement Administration ("DEA") and the Internal Revenue Service Criminal Investigation ("IRS-CI"), and Homeland Security Investigations ("HSI") into a sprawling Chinese money laundering organization (hereinafter "Organization") with operatives in the United States, Mexico, China, and elsewhere. The investigation revealed that the DTOs were delivering drug proceeds to the organization utilizing a network of couriers

who travel throughout the United States to collect drug proceeds from DTOs then deposit the drug proceeds into bank accounts controlled by the Organization at financial institutions including JPMorgan Chase, Bank of America, and Wells Fargo.

For example, Kowloon Holding, Inc., ("Kowloon") was a shell company controlled by the Organization. Multiple bank accounts were opened for Kowloon at various financial institutions. Within about five months, between May and September of 2022, the Organization's couriers known to be under a co-defendant's direction made at least 102 bulk cash deposits, totaling approximately $17.14 million, into Kowloon's accounts at various banks. The couriers carried out these bulk cash deposits in approximately 20 different states, including California, Florida, Illinois, Indiana, Missouri, North Carolina, Tennessee, Texas, Virginia, and Wisconsin. The bulk cash deposited into Kowloon's bank accounts—which were opened by a co-defendant—were usually wire transferred to other bank accounts on the same day before going through additional layers of transfers. For instance, in August 2022, a total of $5,670,264 was deposited into Kowloon's account at Chase Bank, and during the same month, a total of $5,651,593 was transferred out of the same account. Besides these deposits and transfers, Kowloon's bank records are void of any regular and recurring business expenses such as rents, payroll, taxes, purchase of inventory, etc.

The defendant and her co-defendants are members of the Organization and provided critical money laundering services to various drug trafficking organizations ("DTOs") throughout the United States, including the Western District of North Carolina. Starting from around May 2022 to the present, the defendant and her co-defendants are responsible for depositing at least $92 million of illicit funds into U.S. bank accounts controlled by the Organization. From April 2022 to December 2023 the defendant, alone, is responsible for depositing approximately $22,619,538 bulk cash on behalf of the Organization. Below are photos of the Defendant on November 7, 2022, when she made a bulk cash deposit of $150,000 at a Bank of America branch in Concord, North Carolina.



When making these large bulk cash deposits at bank branches all over the U.S., the defendant interchangeably used her real and fake identities. Below are two New York State driver's licenses the defendant had in her possession on July 18, 2022, after being stopped by the

2

Case 3:24-cr-00064-FDW-SCR    Document 19    Filed 04/23/24    Page 2 of 5

Virginia State Police This stop occurred 10 days after she deposited $103,785 bulk cash at a Wells Fargo bank branch in Philadelphia using the name "Yan Feng, Chen." One of the below driver's licenses bears her real name and the name, "Chen Yan Feng." The defendant made deposits totaling at least $7,315,809 using her real name, approximately $3,174,462 using the name "Yan Feng Chen," and approximately $12,129,267 using another false identity in the name of "Chunyan Li.

 

The defendant is a resident of New York. The defendant was born in China and is a naturalized citizen of the United States. The Government is not aware of any contacts the Defendant maintains in the Western District of North Carolina. However, the defendant does have contacts in China. The defendant also has extensive and recent travel history to and from China. The country of China has no extradition treaty with the United States.

II. Legal Standard and Argument

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). If the court finds by a preponderance of the evidence that the defendant presents a flight risk and that no conditions will reasonably assure the defendant's continued presence, the court should order detention. United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). Similarly, a defendant should be detained if the court finds that release on bail would pose a danger to the community, 18 U.S.C. § 3142(e), though detention based on dangerousness must "be supported by clear and convincing evidence," 18 U.S.C. § 3142(f).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis:

> (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .

> or involves a . . . firearm . . .";

> (2) "the weight of the evidence against the person";

> (3) "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings"; and

> (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

The factors identified in the Bail Reform Act make clear that the defendant poses a risk of flight.

First, the charged crimes are serious, and the defendant faces a lengthy prison term. Because of the high loss amount, the government estimates that the defendant, who is in criminal history category I and who has never served time in prison, faces a United States Sentencing Guidelines range of 108 to 135 months, presuming a three-level reduction for acceptance of responsibility. The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987).

Second, the evidence of the defendant's guilt is strong, providing "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

In addition to witnesses who can testify to some the Organization's money laundering activities, the government has amassed evidence of the defendant's laundering activities through analysis of financial records, flights records, and surveillance.

Third, the history and characteristics of the defendant weigh in favor of detention, making her a serious flight risk. During the course of the conspiracy, the defendant used multiple false identities in order to conceal the scope of her money laundering activities. As outlined above, the defendant has no ties to the Western District of North Carolina but maintains ties in her place of birth, China.

Further, the defendant is a frequent and savvy traveler who takes trips to locations across the United States, in short periods of time and with little notice or lead time before departures. Notably, the defendant has significant international travel history since she became a naturalized U.S. citizen in 2014. Specifically, since 2016, the defendant travelled to China at least 11 times and to Mexico twice. For example, just three months ago the defendant flew to China for two

weeks. Just three months prior to that, the Defendant the defendant took a trip to China, her home country which has no extradition treat with the United States.

Fourth, the government submits that in addition to being a risk of flight, the defendant poses a danger to the community based on the conduct charged. The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The defendant and her Organization laundered money for DTOs. By moving millions of dollars in drug proceeds through various channels to include the U.S. banking system and cryptocurrency exchanges, the defendant and her co-conspirators directly empowered foreign and U.S.-based DTOs to profit from the drug use and addiction of the American people and while continuing to flood the nation with illegal drugs, destroying lives and communities.

       MARLON COBAR, Chief
       Narcotic and Dangerous Drug Section
       U.S. Department of Justice
       Washington, D.C. 20530

       */s/ Samantha Thompson*
       Samantha Thompson
       Trial Attorney
       Narcotic and Dangerous Drug Section
       U.S. Department of Justice
       Criminal Division
       145 N Street, Northeast
       East Wing, Second Floor
       Washington, D.C. 20530
       202-532-4466
       Samantha.Thompson@usdoj.gov